## Louis V. Bertocchi's Case.

No. 02-P-888.

Suffolk. November 19, 2002. - July 15, 2003.

Present: Jacobs, Doerfer, & Cohen, JJ.

*Workers' Compensation Act,* Lump-sum settlement. *Administrative Law,* Agency's interpretation of statute.

The reviewing board of the Department of Industrial Accidents properly concluded that a proposed lump sum settlement of a claimant's workers' compensation case was unenforceable where, although signed after the claimant's death by his attorney and the administrator of his estate, the settlement agreement had not been reduced to writing and approved by the reviewing board under G. L. c. 152, § 19, prior to the claimant's death. [563-565]

APPEAL from a decision of the Industrial Accident Reviewing Board.

The case was heard in the Appeals Court by *Cowin,* J.

*Joseph M. Burke* for the employee.

*Leonard Y. Nason* for the insurer.

JACOBS, J. Approximately four weeks before he died, Louis V. Bertocchi accepted an offer to settle his workers' compensation case. The Department of Industrial Accidents (DIA) ruled that the settlement was unenforceable, essentially because it had not been reduced to writing and approved by the DIA reviewing board. The administrator of Bertocchi's estate appeals from a decision of the single justice of this court affirming the DIA's ruling. We conclude that there was no error and, therefore, affirm the decision of the single justice.

*Background.* The facts, in summary and as established by stipulation, are as follows: Bertocchi suffered a work-related injury to his right knee in December of 1986. Aetna Life &

Casualty Company (Aetna), the provider of workers' compensation insurance to Bertocchi's employer, acknowledged liability and paid Bertocchi medical and weekly incapacity benefits under G. L. c. 152, §§ 30 and 34. On July 24, 1989, Aetna's agent orally offered to pay a lump sum of $105,000 to settle Bertocchi's claim, and Bertocchi's attorney, on the same day, orally accepted that offer.[1] On August 4, 1989, Bertocchi's attorney requested that a lump sum conference be scheduled. The DIA scheduled a counseling session for August 29, 1989,[2] and a lump sum conference for September 8, 1989. Bertocchi died on August 19, 1989, as a result of a "massive coronary."[3] When notified of Bertocchi's death, Aetna gave notice that it would not honor its agreement to settle.[4] At the counseling session conducted on August 29, 1989, a DIA counselor recommended the approval of the lump sum settlement. On September 8, 1989, counsel for the parties and the administrator of Bertocchi's estate appeared at the lump sum conference. A lump sum agreement form dated September 8, 1989, and signed by the administrator of Bertocchi's estate and by the attorney who formerly had represented Bertocchi was presented. Counsel for Aetna refused to sign the form and an administrative law judge of the DIA declined to act on the request for approval. After protracted proceedings,[5] the reviewing board of the DIA ruled

[1] Although the stipulation of the parties, filed with the DIA, does not describe the offer and acceptance as having been made orally, the single justice's memorandum describes the settlement communications as being oral and the parties' arguments proceed on that assumption.

[2] At the time, a review by the office of education and vocational rehabilitation of the DIA "[p]rior to approval of any lump sum settlement," was statutorily required under G. L. c. 152, § 48, as inserted by St. 1985, c. 572, § 52. That requirement was eliminated by St. 1991, c. 398, § 75.

[3] Neither party claims that Bertocchi's death was in any way related to his industrial injury. An injury-related death under the Workers' Compensation Act is governed by G. L. c. 152, § 31.

[4] The stipulation indicated that at this time, payments under § 34 were terminated by agreement of the parties. This agreement merely reflected the fact that the death of an employee terminates an insurer's obligation to continue payments under § 34. For current statutory authority for discontinuation of payments in the event of an employee's death, see G. L. c. 152, § 8(2)(*l*).

[5] This case has a regrettably long history. Following the declination by the administrative law judge to act in 1989, another administrative judge, on May

that the proposed lump sum settlement was unenforceable.[6] The single justice affirmed the decision of the reviewing board and its conclusion that there was no agreement cognizable under G. L. c. 152.

*Discussion.* Bertocchi's administrator argues that in 1989,[7] G. L. c. 152 did not require a lump sum agreement to be in writing. At that time, G. L. c. 152, § 48(1), stated: "Under the conditions and limitations specified in this chapter, the insurer and employer may by agreement redeem any liability for compensation, in whole or in part, by the payment by the insurer of a lump sum of an amount to be approved by the reviewing board." Although the word "agreement" was not qualified or defined in that section, among the "conditions and limitations" then in force were those contained in G. L. c. 152, § 19, as inserted by St. 1987, c. 691, § 9, which provided in relevant

24, 1993, denied a request for an order establishing rights in the previously negotiated settlement. That decision was summarily affirmed by the reviewing board on February 17, 1995. On March 27, 1996, the single justice of this court issued a judgment affirming the decision of the reviewing board. On May 27, 1997, this court in an unpublished decision pursuant to our rule 1:28, *Bertocchi* v. *Aetna Life & Cas. Co.,* 42 Mass. App. Ct. 1122 (1997), reversed the judgment of the single justice and remanded the case to the DIA for consideration and answer of stated questions, including whether the documentation before the court was sufficient to constitute an agreement under G. L. c. 152, § 19. After remand, another administrative judge of the DIA responded to the questions set forth in this court's rule 1:28 memorandum and order and in October, 1998, found that the record did not contain any documents which would constitute an agreement under § 19. A second reviewing board, by decision filed on February 16, 2000, affirmed the decision of that judge. The single justice of this court, by judgment entered on June 5, 2002 (00-J-153), affirmed the decision of that reviewing board. The appeal of the 2002 judgment rendered by the single justice is before us.

We note that, while this court concluded in its rule 1:28 memorandum and order that the DIA erred in deciding that Aetna had the unilateral right to refuse to honor the settlement agreement, that conclusion was premised on the sufficiency of the settlement documentation filed with the DIA. Therefore, even if we were to accord precedential effect to the decision, it would not compel a result contrary to that reached here.

[6]The statutory scheme leaves actual enforcement of DIA orders and decisions to the Superior Court. See G. L. c. 152, § 12.

[7]The parties agree that the controlling date is September 8, 1989, the day the proposed settlement was presented to the DIA. See St. 1991, c. 398, §§ 74, 106-107 (1991 amendment to G. L. c. 152, § 48[1], is "procedural in character"); *Eastern Cas. Co.* v. *Roberts,* 52 Mass. App. Ct. 619, 626-627 (2001).

part that "any payment of compensation shall be by *written agreement* by the parties and subject to the approval of the department" (emphasis supplied). In 1989, payment of a lump sum under § 48 constituted a "payment of compensation." *Hansen's Case*, 350 Mass. 178, 180 (1966) ("A lump sum agreement has been held to be 'an agreement in regard to compensation' which requires board approval under G. L. c. 152, § 6 [the predecessor to § 19]"). See *Conlon* v. *Lawrence*, 299 Mass. 528, 532 (1938); Locke, Workmen's Compensation § 417 (2d ed. 1981). The 1991 amendment to § 48(1), see St. 1991, c. 398, § 74, which, inter alia, inserted the words "by an agreement pursuant to section 19," rather than establishing a new requirement as contended by Bertocchi's administrator, merely gave expression to that which previously was contextually implicit.

The requirement of a written agreement of the parties could not be satisfied by the filed document separately signed after Bertocchi's death by his attorney and the administrator of his estate. The document utilized was the printed form generated by the DIA, which called for a signature of the claimant's counsel in addition to the signature of the claimant. Not only was the administrator of Bertocchi's estate not a party to the lump sum agreement in the sense that he did not participate in the settlement, but also there is no provision in the legislative scheme of the Workers' Compensation Act for the derivative exercise of an employee's nonvested *settlement* rights by his estate.[8] "There is no right to compromise the liability for weekly payments except under the act." *Gannon* v. *Contributory Retirement Appeal Bd.*, 338 Mass. 628, 634 (1959). The only provision for the derivative exercise of an employee's rights under the act is conferred

---

[8]Once an employee's rights are vested under G. L. c. 152, § 48(1), by virtue of properly having been exercised during his life, the representative of the employee's estate may seek to enforce them. See, e.g., *Ferreira* v. *Arrow Mut. Liab. Ins. Co.*, 15 Mass. App. Ct. 633 (1983) (before employee's death, lump sum agreement signed by both employee and insurer was presented to DIA and recommended for approval by single member of DIA after hearing conference). Similarly, an employee's right to compensation payments under c. 152 may be enforced by his estate or by certain named family members (see G. L. c. 152, § 36A) after his death. See Locke, Workmen's Compensation § 469 (2d ed. 1981).

on the guardian or next friend of an employee pursuant to G. L. c. 152, § 40.

To the extent that Bertocchi's administrator relies on a common law "meeting of the minds" analysis, it suffices to note that "[s]ince the parties were subject to the [workers'] compensation act 'all their rights arising under it are to be settled by the agencies there provided and not as in actions at common law.' *Young* v. *Duncan*, 218 Mass. 346, 351 [1914]." *Conlon* v. *Lawrence*, 299 Mass. at 532. Similarly, while we are mindful that "[t]he Workers' Compensation Act is to be construed liberally for the protection of an injured employee," *Hepner's Case*, 29 Mass. App. Ct. 208, 212 (1990), this guiding principle does not control when the statute prescribes a specific procedure that an administrative agency or tribunal must follow. See *Levangie's Case*, 228 Mass. 213, 217 (1917); *Taylor's Case*, 44 Mass. App. Ct. 495, 498 (1998). Also, although the DIA's interpretation of its governing statute is not binding upon us, "it is entitled to weight and deference." *Hepner's Case*, *supra*. In the circumstances, strict enforcement of the requirement of a written agreement called for under c. 152, § 19, see *Weitzel* v. *Travelers Ins. Cos.*, 417 Mass. 149, 153 (1994), reflects the reality that oral settlement agreements occasionally unravel before formal presentation to a tribunal or court.

Accordingly, the judgment of the single justice affirming the decision of the reviewing board that there was no settlement agreement cognizable under G. L. c. 152 is affirmed.

*So ordered.*