Tucker, Richard T., J.
This action arises out of a settlement agreement (“the Agreement”) between the plaintiff, John R. Finn (“Mr. Finn”), and the defendant, Commonwealth of Massachusetts Executive Office of Public Safely and Security, Department of Correction (“Department of Correction”). Mr. Finn seeks the rescission of the Agreement on the grounds of mutual mistake. He now moves for summary judgment pursuant to Mass.R.Civ.P. 56. The Department of Correction opposes Mr. Finn’s motion and cross moves for summary judgment in its favor. After review of the materials submitted by counsel, and counsels’ arguments at hearing, I find and rule as follows.
BACKGROUND
Mr. Finn was employed as a correction officer for the Department of Correction at the North Central Correctional Center in Gardner, Massachusetts.[1] On or about September 30, 1990, he was injured as a result of a violent attack by a prison inmate. Mr. Finn was disabled from his job and was awarded permanent and total disability benefits through the Workers’ Compensation system. As of December 19, 1991, Mr. Finn was awarded Accidental Disability Retirement (“ADR”) benefits from the Massachusetts State Board of Retirement (“Retirement Board”) in addition to his Workers’ Compensation benefits.[2]
On May 19,2009, Patricia G. Noone, Esq. (“Attorney Noone”), a staff attorney from the Department of Correction’s legal office, contacted Mr. Finn’s attorney, Richard D. Surrette, Esq. (“Attorney Surrette”), and offered $10,000 to settle the Workers’ Compensation case.[3] Mr. Finn agreed to go forward with the settlement. On June 12, 2009, Administrative Judge Paul F. Benoit of the Department of Industrial Accidents approved the Agreement in accordance with the statute governing lump-sum agreements, G.L.c. 152, §48. At the hearing, both parties represented that the Agreement was in Mr. Finn’s best interest.[4]
At the time of the settlement on June 12, 2009, Mr. Finn was receiving $474.47 in weekly Workers’ Compensation benefits pursuant to G.L.c. 152, §34A, and an additional $610.60 in weekly supplemental benefits pursuant to G.L.c. 152, §34B for Cost of Living Adjustments (COLA). Accordingly, Mr. Finn’s monthly benefit was $4,340.28. Following the approval of the settlement by the AJ Paul Benoit, on July 30, 2009, Attorney Surrette learned for the first time that Mr. Finn’s ADR benefits would amount to $2,417.79 per month, a significantly lower amount than Mr. Finn was receiving in Workers’ Compensation benefits.[5]
On November 17, 2009, Mr. Finn filed an action for rescission, pleading that the parties entered the Agreement with an erroneous belief that his ADR benefits would be equal to or greater than his Workers’ Compensation benefits. The Department of Correction responded to the complaint with a motion to dismiss, or in the alternative, for summary judgment, arguing that there was no mutual mistake on behalf of the parties to the Agreement. This court (Kaplan, J.) heard the motion on March 2, 2009. After the hearing, the court denied the motion on the grounds that there were questions of material fact in dispute as to what the Department of Correction knew at the time of the Agreement.
After the motion- hearing took place, Attorney Noone’s deposition revealed that she did not know what Mr. Finn’s ADR benefits would be once the Workers’ Compensation case was settled.[6] Based on *611 this information, Mr. Finn now moves the court to set aside the Agreement, alleging that there was mutual mistake on both sides. The Department of Correction denies any mistake in entering into the Agreement. It cross moves for summary judgment in its favor, arguing that no valid grounds for the rescission of the Agreement exist.
DISCUSSION
A.Legal Standard
Summary judgment is appropriate where there are no genuine issues of material fact and the moving parly is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue and that the record entitles it to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989).
A party who does not bear the burden of proof at trial may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case at trial. Flesner v. Techmcal Commc’ns Corp., 410 Mass. 805, 809 (1991). Once the moving party “establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts which would establish the existence of a genuine issue of material fact.” Pederson, 404 Mass. at 17. The court reviews the evidence in the light most favorable to the nonmoving party, but does not weigh evidence, assess credibility, or find facts. See Attorney Gen. v. Bailey, 386 Mass. 367, 370-71 (1982).
B.Claim of Mutual Mistake
Mr. Finn argues that both parties shared the belief that his ADR benefits would be greater or equal to his Workers’ Compensation benefits, and that this mistake was related to an essential element of the Agreement. Specifically, he contends that, based on Attorney Noone’s deposition testimony, there is no genuine dispute of fact that the Department of Correction was unaware as to what his ADR benefits would be when it entered into the Agreement. Furthermore, he points out that there is no genuine issue of fact that the Department of Correction’s attorney was mistaken in endorsing the settlement as being in Mr. Finn’s best interest. He also argues that because the parties’ intent in reaching the Agreement was to effect a lateral transfer of benefits, the new ADR amount payable to Mr. Finn is an essential element of the Agreement.
The Department of Correction denies any mistake in entering into the Agreement. It asserts that its only reason for entering into the Agreement was to foreclose its liability for paying Mr. Finn’s ongoing Workers’ Compensation benefits. Accordingly, it contends that Mr. Finn’s receipt of ADR benefits and the amount of those benefits are neither essential to the settlement of his Workers’ Compensation case, nor are they the subject of the Agreement. It further argues that Attorney Noone did not need to know how much Mr. Finn would receive in ADR benefits because it was not a relevant fact in advising the Department of Correction with regard to the transaction. Moreover, it states that even though Attorney Noone did not have the information with regard to the amount of Mr. Finn’s ADR benefits, the Department of Correction was fully aware that Mr. Finn’s full ADR benefit would be less than his Workers’ Compensation benefits.[7]
“Under G.L.c. 152, §48, the parties to a workers’ compensation claim may enter into a lump-sum agreement in redemption of the employer’s liability for . . . benefits.” LaFleur v. C.C. Pierce Co., 398 Mass. 254, 257 (1986). “Once approved by the board, this agreement precludes reopening of the case except upon a showing of fraud or mutual mistake” (citation omitted). Id. “Where there has been a mistake between the parties as to the subject matter of a contract, there has been no ‘meeting of the minds,’ and the contract is voidable at the election of the party adversely affected” (citation omitted). Id. at 257-58. “The mistake must be shared by both parties, and must relate to an essential element of the agreement” (citation omitted). Id. at 257-58. “A mutual mistake must involve a fact capable of ascertainment at the time the contract was entered into, and not a mere expectation or opinion about future events” (citation omitted). Id. at 258.
This court concludes that, on the undisputed facts, the mistake as to Mr. Finn’s ADR benefits was not mutual. The record demonstrates that the Department of Correction was aware that Mr. Finn’s benefits might not remain the same after the parties entered into the Agreement. It was not, however, the Department of Correction’s responsibility to investigate the exact amount of Mr. Finn’s future benefits, as the amount of Mr. Finn’s pension was not the essence of the Agreement. The person responsible for confirming the amount of the ADR benefits, Attorney Surrette, chose not to avail himself of the opportunity to ascertain Mr. Finn’s benefit level before entering into the Agreement on Mr. Finn’s behalf. Accordingly, he chose to assume the risk that Mr. Finn’s future benefits would be less than his past benefits.[8] See LaFleur, 398 Mass. at 257 (“A contract will not be rescinded for mutual mistake where one party was aware at the time the contract was signed that he had limited knowledge as to essential facts, but nonetheless assumed the risk that circumstances would prove to be other than as expected”).
C.Approval of the Agreement
Finding that the parties were not mutually mistaken entering into the agreement does not, however, conclude the Court’s analysis. A third, indispensable party, is involved in the lump sum settlement agreement. The law clearly provides that the lump sum *612 settlement agreement cannot be enforced unless the settlement Is approved in accordance with the provisions of §48 of the Workers’ Compensation Act. Rebeiro v. Travelers Insurance Co., 27 Mass.App.Ct. 1116 (1989). Under Section 48, “a lump sum agreement shall not have been perfected until and unless approved” by the Department “as being in the claimant’s best interest.” Opare’s Case, 77 Mass.App.Ct. 539, 542 (2010), quoting Conlan v. Lawrence, 299 Mass. 528, 532 (1938). The approval by an Administrative Judge is more than a formality or ministerial act. “The determination of a lump sum [settlement] calls for careful scrutiny of the evidence, the exercise of sound judgment and good practical sense, so that the amount will be as near as possible to the present value of all the compensation payments which the employee would be entitled to receive in the future.” Paltsio’s Case, 329 Mass. 526, 529 (1952). Thus the Act provides for the approval process under Section 48 and directs the Administrative Judge to make an exacting inquiiy.
Although the written agreement in the instant matter was upon a lump sum settlement agreement form executed by the parties, and was approved by the Administrative Judge after hearing, such approval must still constitute “a legal approval.” Sterling’s Case, 233 Mass. 485, 490 (1919). Any “further inquiiy” related to a lump sum agreement approval pursuant to Section 48 must be raised in Superior Court. G.L.c. 132, §19; LaFleur v. C.C. Pierce Co., 398 Mass. 254, 257 (1986); Perkin’s Case, 278 Mass. 294, 299 (1932).
At oral argument by counsel on the hearing on the cross motions for summary judgment, both sides claimed this matter to be governed by LaFleur v. C.C. Pierce Co., 398 Mass. 54 (1986). In LaFleur the Supreme Judicial Court adopted the “unknown injury” rule and reversed a Superior Court’s summary judgment against the claimant who wished to rescind a lump sum settlement agreement on the ground of mutual mistake. The LeFleur court remanded the matter for determination as to whether there had been a conscious and deliberate intention by the parties to release claims for injuries existing but not known to them at the time of the agreement. Id. 260-62. In ruling, the Court distinguished cases where avoidance on the ground of mutual mistake as to the existence of an injury has been allowed, as opposed to avoidance due to unknown consequences of known injuries. Id. at 259. The Court held that the Superior Court misinterpreted prior holdings to preclude rescission of the agreement on the basis of newly discovered injuries irrespective of whether those injuries existed before or arose after the settlement was consummated. Id. at 262. As stated previously both the claimant and the Department of Corrections argue that the LeFleur decision supports its position as to rescission of the present agreement on the ground of mutual mistake. This Court has concluded that no mutual mistake of fact exists.
The appellate courts have almost exclusively dealt with claims for rescission of lump sum agreements based upon one of two separate grounds: fraud or mistake. LaFleur v. C.C. Pierce Co., Inc., 398 Mass. at 257, Hansen’s Case, 350 Mass. 178, 180 (1966). Although these are the two grounds customarily used in seeking rescission, they are not the only possible grounds. In the decision of Ferreria v. Arrow Mutual Liability Insurance Co., 15 Mass.App.Ct. 633, 635 (1983), the Appeals Court stated “barring mutual mistake, fraud or other principles of equity, we believe that when an instrument with the finality of an agreement for redeeming liability has been executed and filed with the division, presented to a single member for approval at a hearing conference, and recommended for approval by that member, [a party] may no longer unilaterally rescind the agreement.” (Emphasis added.) In the present matter this Court is of the opinion that principles of equity are at issue which render the approval of the lump sum agreement of the Administrative Judge voidable.
In submitting the Agreement for Redeeming Liability by Lump Sum settlement to the Administrative Judge for approval both parties certified by their signatures that the settlement was in the employee’s best interest. Indeed the Administrative Judge was required to make a finding that the agreement was in the claimant’s best interest. In making such a finding, an Administrative Judge must necessarily rely upon facts submitted by the parties. It is admitted that at the time of the submission of this agreement the plaintiffs counsel and the plaintiff were unaware of the ultimate impact that the cost of living adjustments would have upon the claimant’s benefit once the agreement was approved and workers’ compensation benefits ceased. It is also admitted that despite the Department of Correction’s legal counsel’s lack of knowledge whether the benefit would be greater or less under ADR, the Department of Corrections presumed that claimant’s weekly benefit would be $595.61 per week, a far cry from the approximate $1,336.00 per week Mr. Finn had been receiving monthly in workers’ compensation benefits. Although it is argued correctly by defendant’s counsel that the Department of Correction is not responsible for providing the claimant any advice as to the advantages of the lump sum settlement, each party is under an obligation to advise the Administrative Judge as to the facts upon which each believes that the settlement is in the claimant’s best interest. That was not done here. As a result the Administrative Judge was not able to render an informed approval of the agreement. The agreement is rescinded and remanded to the Department of Industrial Accidents for further proceedings.
ORDER
The Agreement for Redeeming Liability by Lump Sum settlement is rescinded. This matter is remanded *613 to the Department of Industrial Accidents for further proceedings.

 Mr. Finn’s average weekly wage was $827.23.

 An employee of the Commonwealth who is injured within the scope of his or her employment is often eligible to receive ADR benefits through the State Retirement Board in addition to Workers’ Compensation benefits. The maximum Workers’ Compensation benefit is 66.66% of the average weekly salary. The ADR benefit amounts to 72% of the employee’s annual salary. Each system calculates the average weekly wage differently, but the respective benefits are usually comparable. In a case where the employee is eligible for benefits under both systems, the employee receives the full Workers’ Compensation entitlement but his or her ADR benefit is largely offset. If the employee stops receiving his or her Workers’ Compensation benefit, he or she then begins receiving full ADR benefits.

 It is a common practice for the Commonwealth and the employee to agree to settle the Workers’ Compensation case for a nominal amount with the understanding that the employee will then receive his or her full ADR benefits. Such an arrangement is beneficial to the Commonwealth because it is then able to close out the indemnity portion of the Workers’ Compensation case. The Retirement Board is entitled to repayment of benefits it has paid (usually 15% of the settlement is agreed upon in full settlement of its claim) and after an attorneys fee and costs are deducted, the employee receives the balance of the gross settlement.

 In the Agreement for Redeeming Liability by Lump Sum, the parties to the settlement agreement set forth the following as an explanation as to why the settlement is in the employee’s best interest:
This 60 year old corrections officer was injured after being attacked by an inmate. The employee sustained a severe cervical strain/sprain injury and underwent a fusion procedure. The employee also suffered a concussion and alow back strain/sprain injury. The employee never returned to work and after exhausting §34 benefits, was placed on §34A. The employee is on ADR and is currently residing in an assisted living facility. The parties have reached a proposed settlement agreement which will provide the employee with lump sum cash proceeds and the employee will then receive his full ADR entitlement. For the foregoing reasons, the proposed settlement is in the employee’s best interest and should be approved.
Additionally, Attorney Surrette represented to the Administrative Law Judge of his understanding that since the ADR benefits were calculated at a higher percentage rate of Mr. Finn’s average weekly wage (72%) than the Workers’ Compensation benefit (66%) the settlement was in Mr. Finn’s best interest.

 The reason for the discrepancy is that the State Retirement System benefit did not keep pace with the Workers’ Compensation benefit increased yearly by cost of living adjustments (COLA).

 The Department of Correction has set forth in an additional statement of material fact (Superior Court Rule 9A(b)(5)(iv)), that despite Attorney Noone’s lack of knowledge whether Mr. Finn’s ADR benefits would be higher or lower than his workers’ compensation benefits, it presumed that the Plaintiffs ADR benefits would be no greater than 72% of his Average Weekly Wage; that is, 72% of $827.23 or $595.61 per week.

 See footnote 6 infra.

 This is not to say, however, that in light of the relative benefit rates, i.e. 72% for ADR and 66% for workers’ compensation, that counsel was unreasonable in his belief that the ÁDR benefit would be higher.